UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHILLIP H. MORGAN | ) | Case No. 21-50382 |
| | ) | |
| Debtor(s) | ) | |

| | | |
|---|---|---|
| MARK R. LITTLE, TRUSTEE, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE | ) ) ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 22-5008 |
| | ) | |
| THE HATLER E. MORGAN GENERATION SKIPPING TRUST, PHILLIP H. MORGAN, TRUSTEE | ) ) ) ) | |
| and | ) | |
| PADUCAH INSURANCE AGENCY, LLC | ) ) | |
| and | ) ) | |
| JARED MORGAN, INDIVIDUALLY | ) ) | |
| and | ) ) | |
| JUSTIN MORGAN, INDIVIDUALLY | ) ) | |
| and | ) ) | |
| JOEL MORGAN, INDIVIDUALLY | ) ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Motion for Summary Judgment (the Motion") filed Defendants, Paducah Insurance Agency, LLC ("PIA"), Jared Morgan ("Jared"), Justin Morgan ("Justin"), and Joel Morgan ("Joel" and collectively with PIA, Jared, and Justin, the

"Defendants"). In the Motion, the Defendants seek summary judgment on all of the claims asserted in the complaint filed by Plaintiff, Mark R. Little, Chapter 7 Trustee ("Trustee" or "Plaintiff"), against the Defendants as set forth in Counts I, III, IV, and V. The Trustee opposes the Motion. Each party supported their position with exhibits and other supporting documentation. As discussed more fully below, based upon the undisputed facts, the exhibits, and the applicable law, the Court has determined that the Defendants' Motion for Summary Judgment should be granted.

**I.    FACTS**

On or about October 20, 1999, the Hatler E. Morgan Living Trust was established (the "Hatler Trust"). Pursuant to the terms of the Hatler Trust, when Hatler E. Morgan passed, a Generation Skipping Trust was created for each of his four children, including Phillip H. Morgan ("Phillip" or "Debtor"). Debtor is the trustee of The Hatler E. Morgan Generation Skipping Trust for the benefit of Phillip H. Morgan (the "GST Trust").

On or about September 1, 2004, Debtor and his then spouse, Galina Morgan, deeded real property located at 3128 Old Mayfield Road, Paducah, Kentucky 42001 (the "Property") to GST Trust (the "Deed"). The Deed was recorded on November 30, 2017 with the McCracken County Circuit Court Clerk.

On November 3, 2017, the Debtor and his son, Jared Morgan, created PIA. A few days later, on November 7, 2017, Debtor and Jared Morgan filed Articles of Organization with the Kentucky Secretary of State. According to PIA's Articles of Organization, the organizers were Phillip Morgan and Jared Morgan. The Articles of Organization listed PIA's members as Phillip Morgan and Jared Morgan. Jared and Phillip Morgan formed PIA for the purpose of acquiring the book of business from Bradshaw & Weil, Inc., an insurance agency located in Paducah, Kentucky for whom Phillip

and Jared worked. At the time of formation, PIA had no assets or liabilities.

GST Trust, on or about November 29, 2017, executed a promissory note in favor of Community Financial Services Bank ("CFSB") in the amount of $221,000.00 (the "Note") (the "Loan Proceeds"). The Note was secured in its payment and performance by the Property.

In order to purchase the book of business from Bradshaw & Weil, Inc., PIA needed to borrow funds. Because the GST Trust had the necessary resources, it, rather than the Debtor individually, needed to become the co-member of PIA. On December 7, 2017, an Operating Agreement was executed on behalf of PIA (the "Operating Agreement"). The Operating Agreement states it "is made as of the 7th day of December, 2017, by and among Jared Morgan and the Hatler E. Morgan Generating [sic] Skipping Trust for the Benefit of Phillip H. Morgan, both Members of" PIA.

Pursuant to this Operating Agreement, the membership of PIA consisted of Jared Morgan, holding a 60% interest, and the GST Trust, holding a 40% interest. As for initial contributions of the members, the Operating Agreement states that Jared Morgan's initial contribution was $0, while the GST Trust's initial contribution was $221,000, representing the Loan Proceeds. While not delineated in the Operating Agreement, Jared submitted an affidavit stating that his contribution for his 60% ownership interest in PIA was his book of business, servicing income from American Church Group of Kentucky, LLC, which totaled approximately $108,000.00 in 2018, and his full-time commitment to PIA.

Pursuant to the Operating Agreement, "[i]n the event that [GST Trust] desires to withdraw from the LLC, after Jared Morgan is given an opportunity to purchase said ownership interest, then if that right of refusal is declined, then the shares of [GST Trust] shall be first offered equally to

Justin E. Morgan…, Joel D. Morgan…, and Jared Morgan."

The Operating Agreement was signed by Jared Morgan, Member, and Phillip Morgan, Member. Consistent with the Article of Organization, these were the only members of PIA at that time.

On January 24, 2018, PIA, Jared, and GST Trust entered into an Asset Purchase Agreement ("APA") with Bradshaw & Weil, Inc. for the purchase of its insurance agency assets. The purchase price under the terms of the APA was $880,000.00. The APA is executed by "Phillip Morgan, Trustee, the Hatler Morgan GST FBO Phillip Morgan, Member" and "Jared Morgan, Member."

The Bill of Sale and Assignment, attached as Exhibit 1.5 to the APA, is executed by PIA, through its members, Jared and GST Trust. The purchase price was funded by the Loan Proceeds ($221,000.00) and through a loan with Live Oak Bank in the principal amount of $780,000.00 (the "Live Oak Loan"). The Live Oak Loan is secured in its payment and performance by a lien against all of PIA's assets. The Live Oak Loan was also guaranteed in its payment and performance pursuant to the Unconditional Guarantee executed by the member, GST Trust.

On April 3, 2018, Jared Morgan prepared and filed PIA's annual report with the Kentucky Secretary of State. This annual report listed Phillip Morgan and Jared Morgan as the two members/managers. While this annual report was consistent with the Articles of Organization, it was inconsistent with the later-executed Operating Agreement.

Two days later, on April 5, 2018, Jared Morgan prepared and filed an amended annual report. In this amended annual report, GST Trust was substituted in for Phillip Morgan thereby making the report consistent with the Operating Agreement.

The 2019 and October 5, 2020 annual reports reflect PIA's members as the GST Trust and

Jared Morgan.

Sometime between October 5, 2020 and December 1, 2020, GST Trust decided it wanted to withdraw from PIA. Consistent with provision 4.5 of the Operating Agreement, on December 1, 2020, GST Trust offered its 40% membership ownership to Jared, Justin, and Joel and which offer was accepted pursuant to the Stock Purchase Agreement (the "SPA"). In accordance with the SPA, this resulted in Jared owning eighty percent (80%), Justin owning ten percent (10%), and Joel owning ten percent (10%) of PIA. The purchase price paid for GST Trust shares was $393,000.00 with $15,000.00 remitted as a down payment and the balance to be paid over a period of seven (7) years at the rate of $4,500.00 per month.

A new annual report, filed December 7, 2020, reflected PIA's changed membership to now include Jared Morgan, Justin Morgan, and Joel Morgan.

On September 30, 2021, the Debtor, Phillip Morgan, filed for Chapter 7 under Bankruptcy Code. Mark Little was appointed Chapter 7 Trustee on October 1, 2021.

On July 20, 2022, the Trustee filed the action currently before the Court. In Count I of the Complaint, the Trustee alleged that the Debtor's transfer of his ownership interest in PIA to the GST Trust was a fraudulent transfer under § 548(a)(1)(A). Counts III-V alleged that the transfer of the 40% interest in PIA to Jared Morgan, Justin Morgan and Joel Morgan were fraudulent transfers.[1] In his prayer for relief, the Trustee demanded that this Court find the forty (40%) ownership interest in PIA is the property of the Debtor and is property of the bankruptcy estate. The Trustee also demanded the Court find the transfer of 40% interest in PIA to Jared, Justin, and Joel is void and,

---

[1] Count II of the Complaint dealt with allegations against the GST Trust which are not relevant to the Motion currently before the Court.

5

pursuant to 11 U.S.C. §550, should be transferred to the bankruptcy estate of the Debtor.

On November 17, 2022, the Defendants filed the Motion for Summary Judgment currently before the Court. The motion first challenges whether this Court has jurisdiction to decide this matter. The Defendants base this argument on their allegation that the transfers in question here are between non-debtors. They contend that the Debtor's interest in GST Trust is the property of the bankruptcy estate. They further argue GST Trust's ownership interest in PIA is not an asset of the estate. The Operating Agreement provided that GST Trust is the owner of 40% of PIA. GST Trust, and not the Debtor, made the initial capital contribution to PIA. GST Trust is the record member in the annual reports filed for three years. The Defendants contend that GST Trust signed the APA. Debtor did not own any interest in PIA when the assets were purchased. With regard to GST Trust's transfer to Jared Morgan, Justin Morgan, and Joel Morgan, since GST Trust owned the interest in PIA, to the extent this transfer was voidable it would be voidable to the GST Trust not the Debtor (or his bankruptcy estate).

In his response, the Trustee asserts that the primary issue between the Trustee and the Defendants is whether the GST Trust owned forty percent of PIA at the time of the execution of the Stock Purchase Agreement. The Trustee contends that GST Trust did not own 40% of PIA but rather the Debtor, Phillip H. Morgan, was the owner. As such, the transfer of the 40% interest in PIA in the December 1, 2020 Stock Purchase Agreement was a fraudulent conveyance of assets belonging to the Debtor.

The Trustee asserts that the Debtor and Jared Morgan formed PIA on November 3, 2017, and that they are the only two members of PIA. The GST Trust was never listed as a member in the Articles of Organization. The Trustee further contends that from the date of formation until April

3, 2018, the Debtor and Jared Morgan were the only two members of PIA listed with the Kentucky Secretary of State. At the time of the SPA, PIA was owned by its members, Phillip and Jared Morgan.

## II.     JURISDICTION

The Defendants first challenge whether this Court has jurisdiction to decide this matter. They argue that this Court lacks even related to jurisdiction under 28 U.S.C. § 1334 . The Court disagrees. Section 1334(b) provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Thus, Section 1334 provides that this Court has jurisdiction to hear three different types of proceedings – proceedings "arising under" the Bankruptcy Code, or "arising in" or "related to" cases under the Bankruptcy Code. "Related to" jurisdiction is the broadest category of jurisdiction set forth in Section 1334(b). *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991). "Related to" jurisdiction hinges on whether "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

It is generally recognized that "[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E). *In re Duval County Ranch Co.*, 167 B.R. 848 (Bankr. S.D. Tex. 1994). Determining whether a debtor had a legal or equitable interest in property prior to or on the petition date is often a prerequisite to exercising and granting relief under a multitude of Bankruptcy Code sections.

In this case, the question presented to this Court is a property of the bankruptcy estate question. The Court must decide whether the Debtor was a member of PIA at the time of the SPA. The Debtor's membership interest is a property of the estate question. The Court must determine who the members of PIA were when the SPA transfer was made to Jared, Justin, and Joel Morgan. This determination will decide if a transfer of the Debtor's interest in property occurred. The Court finds that it has, at a minimum, related to jurisdiction under 28 U.S.C. § 1334.

### III. STANDARD

To grant a motion for summary judgment, a Court must find that there is no genuine dispute as to any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The movant bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies that burden, the non-moving party must thereafter produce specific facts demonstrating a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although the Court must review the evidence in the light most favorable to Plaintiff, as the non-moving party, he must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the plaintiff is required to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Bankr. P. 7056(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must

be evidence on which the jury could reasonably find for the [non-moving party]. *Anderson*, 477 U.S. at 252.

IV.  **LEGAL ANALYSIS**

This case hinges on a central issue: the membership of PIA. The Court must examine how PIA formed, and who were its members at the time of the SPA in December 2020. If the Debtor, and not GST Trust, was a member of PIA at the time of SPA, then the transfers to Jared, Justin, and Joel Morgan are subject to avoidance as fraudulent transfers. Conversely, if GST Trust was the member of PIA in December 2020, and not the Debtor, then the transfer of the interest in PIA to the Jared, Justin, and Joel Morgan would not be a transfer of an interest by the Debtor, but instead a transfer between two non-debtor entities, and not subject to avoidance as a fraudulent transfer.

PIA was formed as a limited liability company. KRS Chapter 275 governs the creation and direction of limited liability companies and the rights of its members. Generally speaking, a limited liability company is a hybrid business entity that offers its members limited liability, as if they were shareholders of a corporation, but treats the entity and its members as a partnership for tax purposes.[2] Limited liability companies are creatures of statute, and their guidelines and requisites are outlined in KRS Chapter 275. *Spurlock v. Begley*, 308 S.W.3d 657, 659 (Ky. 2010); *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). Chapter 275 uses the term "members" rather than owners when referencing ownership of a limited liability company.

KRS § 275.020 governs the formation of a limited liability company. That section provides that "One (1) or more persons may serve as the organizer and form a limited liability company by

---

[2] While tax information may have been probative on the issues presented to the Court, neither party submitted any tax information to the Court.

delivering articles of organization to the Secretary of State for filing. It shall not be necessary that the person or persons be members of the limited liability company." KRS § 275.020.

KRS § 275.025 itemizes the contents which must be included in a limited liability companies articles of organization. It does not require a listing of its members. Subsection (5) of that section provides that a "member of a limited liability company shall not have a vested property right resulting from any provision of the articles of organization." KRS §275.025(5).

Articles of organization may, and, in some instances, must be amended. KRS § 275.030 governs when a limited liability company may or must amend its articles of organization. It is important to note that a change in membership is not one of the conditions that requires an amendment to the articles of organization.

KRS § 275.275 governs admission to membership in a limited liability company. That statute provides:

> (1) Subject to subsection (2) of this section, a person may become a member in a limited liability company:
>
> (a) In the case of the person acquiring a limited liability company interest directly from a limited liability company, upon compliance with an operating agreement or, if an operating agreement does not so provide in writing, upon the written consent of all members; and
>
> (b) In the case of an assignee of the limited liability company interest, as provided in KRS 275.255 and 275.265.
>
> (2) The effective time of admission of a member to a limited liability company shall be the **later** of:
>
> (a) The date the limited liability company is formed; or
>
> (b) The time provided in the operating agreement or, if no time is provided, when the person's admission is reflected in the records of the limited liability company.

KRS 275.275 (emphasis added).

Thus, pursuant to KRS § 275.275(1)(a), a person becomes a member of a Kentucky limited liability company if set forth in the limited liability company's "operating agreement or, if an operating agreement does not so provide in writing, upon the written consent of all members." *Chapman v. Regional Radiology Associates*, PLLC, 2011 WL 1085999, at 4 (Ky. App. 2011). Based upon a reading of the Operating Agreement, it is clear that PIA membership consisted of Jared Moragn and the GST Trust as of December 7, 2017. While the Articles of Organization do not mention the GST Trust, this is not the dispositive factor in determining the membership of PIA. As stated above, PIA's membership, as a limited liability company, is controlled by the later executed Operating Agreement.

To the extent Phillip Morgan was ever a member of PIA, his membership terminated with the execution of the Operating Agreement. Cessation of membership in a limited liability company is governed by KRS § 275.280. Subsection (1)(c) of that section provides that a member ceases to be a member if the member is removed "in accordance with a written operating agreement." In this case the written Operating Agreement is clear and unambiguous that PIA's members consist of Jared Morgan and the GST Trust. Paragraph 4.1 of the Operating Agreement expressly and unequivocally provides as such.

The Trustee takes issue with the Operating Agreement. According to the Trustee, if the Operating Agreement is not considered, then the only way GST Trust could be a member would be through the written consent of all members. The Trustee argues that since no written consent occurred, GST Trust did not become a member of PIA. The Trustee's whole argument is premised on the Operating Agreement being void or otherwise non-enforceable. The Court does not accept

this premise.

The Operating Agreement was executed on December 7, 2017. The Operating Agreement preamble states that the agreement is made by Jared Morgan and the GST Trust. Paragraph 4.2 identifies the members of PIA as Jared Morgan and GST Trust. The Trustee notes, however, that the Operating Agreement not executed by the GST Trust but rather by Phillip H. Morgan, member, which is consistent with PIA's Articles of Organization. Because the GST Trust did not execute the Operating Agreement, the Trustee contends that it could not become a member. The Trustee relies upon the case of *Spurlock v. Begley*, 308 S.W.3d 657, 660 (Ky. 2010) to support his position. In that case, no evidence of an operating agreement was introduced, so the issued turned on whether the other members consented.

The Court finds this case easily distinguishable because in this case the Operating Agreement was presented. As for who executed the Operating Agreement, it seems clear that it could only be executed by Phillip and Jared Morgan, PIA's only members at the time. GST Trust was not a member at the time the Operating Agreement was executed, so it could not execute that Agreement. It would seem strange to suggest that a non-member could execute an operating agreement to become a member. How could a non-member bind a limited liability company to new members? The Operating Agreement was executed by the only two members of PIA at the time of its execution.

After the Operating Agreement was executed, however, GST Trust was a member, and Phillip Morgan was not. The Operating Agreement is clear on this point. KRS § 275.275(s) states the effective time of admission is the later of the date the company was formed – in this case November 2017 – or the time provided in the operating agreement – December 7, 2017. As the

December date is the later, it is the controlling document.

The fact that GST Trust was not listed as a member or as an organizer in the Article of Organization does not alter the fact that the Operating Agreement controlled PIA's membership. The Operating Agreement is not "void" as the Trustee suggests due "to the misidentification of the members." There is no authority to construe the Operating Agreement to include Phillip Morgan when it expressly delineates its two members, which did not include Phillip Morgan. To include Phillip Morgan as a member of PIA after the execution of the Operating Agreement would directly contravene the terms of the Operating Agreement.

The Trustee also puts great emphasis on the April 3, 2018 annual report filed with the Kentucky Secretary of State. While it is true that this report identified Philip Morgan as a member, along with Jared Morgan, this fact is not controlling as to PIA's membership for two reasons. First, as provided by KRS §275.275, PIA's membership is controlled by the Operating Agreement. Second, a corrected report was filed two days later identifying the GST Trust as a member with Jared Morgan. The amended annual report listing GST Trust as a member correctly corresponds to the controlling Operating Agreement. The affidavit filed by Jared Morgan explains that the April 3, report contained an "error" that was corrected with the April 5 annual report. The Trustee introduced no evidence to suggest that the April 3 report was anything but a simple mistake, a scrivener's error, that was corrected in a timely fashion.

This conclusion as to PIA membership is not only consistent with the Operating Agreement, the application of KRS §275.275, the intent of the parties, but it is also correct when considering who made contributions to PIA in order for it to execute the APA to purchase the book of business from Bradshaw & Weil, Inc. in 2018. It was GST Trust, not the Debtor, who made the capital

13

commitment of $221,000.00. The Debtor, individually, contributed nothing to PIA for any ownership interest. The Debtor put nothing in and he received nothing. Neither the Debtor nor his creditors were harmed when GST Trust became one of the two PIA members.

## V. CONCLUSION

To conclude, the Court will grant the Defendants' Motion for Summary Judgment. The Court finds that while Phillip Morgan may have been an original member of PIA, his membership terminated with the execution of the Operating Agreement. The Operating Agreement is clear and unambiguous and it did not include Phillip Morgan as a member. At the time of the SPA, PIA's members were Jared Morgan and the GST Trust. Consequently, the transfer of GST Trust's interest in PIA to Jared, Justin, and Joel Morgan was not a transfer of the Debtor's property. A separate order will be entered in accordance with this memorandum opinion.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: February 9, 2023

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHILLIP H. MORGAN | ) | Case No. 21-50382 |
| | ) | |
| Debtor(s) | ) | |
| | | |
| MARK R. LITTLE, TRUSTEE, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE | ) ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 22-5008 |
| | ) | |
| THE HATLER E. MORGAN GENERATION SKIPPING TRUST, PHILLIP H. MORGAN, TRUSTEE | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| PADUCAH INSURANCE AGENCY, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JARED MORGAN, INDIVIDUALLY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUSTIN MORGAN, INDIVIDUALLY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOEL MORGAN, INDIVIDUALLY | ) | |
| | ) | |
| Defendants | ) | |

**ORDER**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

IT IS ORDERED that the Motion for Summary Judgment filed by Defendants Paducah Insurance Agency, LLC, Jared Morgan, Justin Morgan, and Joel Morgan is GRANTED and that all claims against these Defendants are hereby dismissed in their entirety, with prejudice.

IT IS FURTHER ORDERED a telephonic pre-trial conference will be held on March 7, 2023 at 9:00 a.m. Eastern Standard Time (8:00 a.m. Central Standard Time) to address the remaining claims against the Defendant, the Hatler E. Morgan Generation Skipping Trust, Phillip H. Morgan, Trustee.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: February 9, 2023